**UNITED TRIBE OF SHAWNEE INDIANS, Plaintiff,**

v.

**UNITED STATES of America et al., Defendants.**

**No. CIV. A. 99–2063–GTV.**

United States District Court, D. Kansas.

June 29, 1999.

**1240**

Sean W. Pickett, O'Connor Weber Pickett Gale, L.L.C., Kansas City, MO, for plaintiff.

Janice M. Karlin, Office of United States Attorney, Kansas City, MO, for defendants.

## MEMORANDUM AND ORDER

VanBEBBER, Chief Judge.

Plaintiff brings this declaratory and mandamus action, arising from the government's proposed disposal of property known as the Sunflower Army Ammunition Plant in DeSoto, Kansas. Plaintiff asserts rights under the Federally Recognized Indian Tribe List Act of 1994, 25 U.S.C. §§ 479a & 479a–1, the Indian Gaming Regulation Act, 25 U.S.C. § 2701 *et seq.*, the Federal Property and Administrative Services Act, 40 U.S.C. § 471 *et seq.*, the National Environmental Policy Act, 42 U.S.C. § 4331 *et seq.*, and the common law. The case is before the court on plaintiff's motion (Doc. 19) for a preliminary injunction. On May 18 and 19, 1999, the court conducted an evidentiary hearing on plaintiff's motion. At oral argument held June 21, 1999, defendants requested that its briefs in opposition to the preliminary injunction be considered as a motion to dismiss under Fed.R.Civ.P. 12(b)(1). For the reasons set forth below, defendants' motion to dismiss is granted, and plaintiff's motion for a preliminary injunction is denied.

## I. Factual Background

This case arises from the proposed disposal of the Sunflower Army Ammunition Plant ("Sunflower"), a 9000–acre property located near DeSoto, Kansas. A portion of Sunflower was previously part of an Indian reservation created by the Treaty with the Shawnee, 10 Stat. 1053 (1854). Plaintiff is an organization named the United Tribe of Shawnee Indians, and claims to be the Indian tribe that entered into the 1854 treaty with the United States government. Plaintiff is represented by Jimmie D. Oyler, who asserts that he is plaintiff's principal chief. Plaintiff claims to be based in DeSoto, Kansas, within three miles of Sunflower on land owned by Oyler. Part of Oyler's land, known as Shawnee Reserve No. 206, was patented to Oyler's ancestors pursuant to the 1854 Treaty, which provided for individual allotments to the Shawnees. Plaintiff is made up of thirty members certified by the organization, all of whom are related to Oyler. Oyler testified that there are 10,000 potential members who meet the requirement that members be blood descendants of original allottees pursuant to the 1854 Treaty.

Oyler was born in 1932 and grew up in Oklahoma on the Pawnee and Osage reservations. In 1975, he moved to Shawnee Reserve No. 206. After 1975, Oyler became a member of the United Keetoowah Band of Cherokee Indians. In 1976, Oyler was also a member of the Cherokee Nation. He has since relinquished that membership. Oyler testified that plaintiff allows its members to be members of other tribes. Presumably, that arrangement is permitted under the organization's constitution, a document drafted by Oyler. On December 25, 1994, Oyler was unanimously elected principal chief of plaintiff by eight of his relatives who are also members of plaintiff. The same day, Oyler was designated to draft plaintiff's tribal constitution. Oyler testified that, effectively, he has been principal chief since 1975. Oyler has had a tribal registration card indicating his membership in plaintiff since August 1996. Oyler issued the card to himself. Oyler testified that he is unable to identify any prior principal chief, and is unaware of any prior constitution. Oyler was a party to several legal actions involving Indian law in this court and Kansas state court prior to and including December 1994. Throughout that litigation, Oyler had never indicated the existence of plaintiff or his tribal membership therein.

Oyler initially contacted the Bureau of Indian Affairs (BIA) regarding recognition on December 27, 1994. In June 1995, pursuant to 25 C.F.R. Pt. 83, Oyler on behalf of plaintiff filed with the BIA a "Letter of Intent" to request federal acknowledgement as a previously acknowledged Indian tribe, and an attached "Official Documented Petition." Plaintiff claims that the United Tribe of Shawnee Indians was recognized by the President in the 1854 Treaty, and by the United States Supreme Court in *The Kansas Indians,* 5 Wall. 737, 72 U.S. 737, 18 L.Ed. 667 (1866). The BIA construed the filing as a letter of intent, but informed plaintiff that it had not submitted a fully documented petition as necessary to commence the acknowledgement process. After more correspondence, plaintiff abandoned the administrative process before the BIA determined or considered whether the tribe was previously acknowledged or should be currently acknowledged.

Lee Fleming, Branch Chief of the Branch of Acknowledgement and Research for the BIA, testified that the BIA has not yet received a certified petition under the regulations because the petition submitted by plaintiff was not signed by the governing body described in plaintiff's constitution. *See* 25 C.F.R. § 83.6(b) (requiring certification by petitioning group's governing body). Fleming also testified that the petition submitted by plaintiff contains insufficient documentation to be considered by the agency. *See* 25 C.F.R. § 83.6(c) (requiring documentation in support of each of the criteria contained in 25 C.F.R. § 83.7). Oyler testified that plaintiff has

no relationship to the Absentee Band of Shawnee Indians or the Eastern Band of Shawnee Indians, both of whom are federally recognized by the BIA. Fleming testified that the Absentee and Eastern Bands of the Shawnee Indians also claim descendancy from the 1854 Treaty. There are currently six Shawnee groups that have submitted letters of intent without a fully documented petition. Fleming testified that the BIA has sent letters to plaintiff including the applicable guidelines regarding previously acknowledged tribes, and that the BIA is ready and willing to help with technical assistance and to process a properly documented and certified petition.

In 1998, defendants were considering the potential disposal of Sunflower upon a determination that it was excess property. In September 1998, Thomas G. Stutz, the Department of the Army Commander's Representative, Installment Manager, and Administrative Contracting Officer for Sunflower, signed a Finding of No Significant Impact (FONSI) on the environment with respect to a facility-use agreement which would allow OZ Entertainment Company, a theme park and resort developer, to use facilities at Sunflower for office space while considering eventual development of Sunflower. Plaintiff made no objection to the FONSI. After the FONSI was issued, the Government Services Administration, at the request of the Department of the Army, officially deemed Sunflower excess property and the facility-use lease was never consummated.

Throughout 1998, defendants assessed the environmental implications of ultimately disposing of Sunflower. Stutz testified that 200 acres of the Sunflower site are contaminated, for which the estimated cleanup cost is approximately $62 million. The proposed developer, OZ Entertainment Company, has agreed to be responsible for the remediation costs. If the court enjoins disposal of the property, defendants would incur the remediation costs and the annual maintenance and security expenses for the extended period that defendants would need to fully clean up Sunflower—approximately fifteen to thirty years. No graves or skeletal remains of Native Americans have been found on Sunflower.

In February 1999, defendants issued a preliminary Environmental Assessment and draft FONSI. Blaine Hastings, project manager for the disposition of Sunflower, testified that defendants currently are considering public comments and will issue a supplemental Environmental Assessment in mid-summer 1999. After the final Assessment is published, defendants will issue either a new FONSI, an Environmental Impact Statement, or a mitigated FONSI. Hastings further testified that defendants have not completed the administrative review process with respect to compliance with the National Environmental Policy Act, 42 U.S.C. § 4331 *et seq.*

Hastings also testified that defendants negotiated with the Kansas Development Finance Authority for the early transfer of property prior to environmental remediation, pursuant to 42 U.S.C. § 9620(h)(3)(C). The early transfer of Sunflower will allow for the immediate development of the property, tax revenue to the state and local governments, and state regulation of the property. Hastings testified that although a tract of 9000 acres—the size of Sunflower—is difficult to market and sell, defendants have found an interested purchaser through the state of Kansas. The proposed transfer of the property is planned for August or September 1999. If the disposal is enjoined, defendants would incur the cost of the process again, and lose the current buyer. Portions of the property will ultimately be conveyed to the University of Kansas, to Kansas State University, and to the City of DeSoto, Kansas for public health purposes.

## II. Motion to Dismiss

Defendants requested that the court consider the extensive preliminary injunction pleadings as a motion to dismiss for

lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1).

### A. Sovereign Immunity

 Defendants' sovereign immunity limits the court's jurisdiction over plaintiff's claims. The United States is immune from suit except to the extent that it consents to be sued. *In re Talbot,* 124 F.3d 1201, 1205 (10th Cir.1997). "[N]either the government's attorneys nor any other officer of the United States may waive the United States' sovereign immunity." *Id.* Consent to suit is a prerequisite to subject matter jurisdiction. *Id.* Plaintiff has the burden to establish an explicit waiver of sovereign immunity. *Fostvedt v. United States,* 978 F.2d 1201, 1203 (10th Cir.1992).

 In its second amended complaint, plaintiff asserts that the court has jurisdiction over each of plaintiff's eight claims based on the federal question statute, 28 U.S.C. § 1331, the mandamus statute, 28 U.S.C. § 1361, or the declaratory judgment statute, 28 U.S.C. § 2201. None of these statutes, however, constitute a waiver of sovereign immunity. *Id.* at 1203 (§§ 1331, 1361); *Thomas v. Pierce,* 662 F.Supp. 519, 524 (D.Kan.1987) (§§ 1331, 1361, 2201); *see also Progressive Consumers Federal Credit Union v. U.S.,* 79 F.3d 1228, 1230 (1st Cir.1996) (§ 2201).

Plaintiff also cites the following underlying statutes in its complaint: (1) the Federally Recognized Indian Tribe List Act of 1994, 25 U.S.C. §§ 479a & 479a–1; (2) the Indian Gaming Regulation Act, 25 U.S.C. § 2701 *et seq.;* (3) the Federal Property and Administrative Services Act, 40 U.S.C. § 471 *et seq.;* (4) the National Environmental Policy Act, 42 U.S.C. § 4331 *et seq.;* and (5) 25 U.S.C. §§ 175 & 178. None of these statutes provide an unequivocal express waiver of sovereign immunity which would allow plaintiff's claims to go forward. *See Richman,* 124 F.3d at 1206 (waiver must be unequivocally expressed in the statutory text); *United States v. Murdock Mach. and Eng'g Co. of Utah,* 81 F.3d 922, 930 n. 8 (10th Cir.1996) (same).

In its supplemental memorandum in support of its motion for preliminary injunction, plaintiff asserts two additional bases for a waiver of sovereign immunity: (1) *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 689–90, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), and (2) the Administrative Procedure Act, 5 U.S.C. § 702. The *Larson* case holds that sovereign immunity is inapplicable if plaintiff seeks declaratory or injunctive relief against federal entities or officials seeking to enjoin the enforcement of an unconstitutional statute, or action in excess of the officer's statutory authority. *Larson,* 337 U.S. at 689–90, 69 S.Ct. 1457. Such an exception exists because, if the conduct is beyond the officer's power, it cannot be the conduct of the sovereign. *Id.* at 690, 69 S.Ct. 1457.

 Plaintiff argues that defendants acted outside of the scope of their statutory authority by abrogating plaintiff's treaty with the United States. "[W]here the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions." *Id.* at 689, 69 S.Ct. 1457. Plaintiff, however, has failed to identify a violation of any statutory limitation on defendants' authority.[1] *See id.* at 690, 69 S.Ct. 1457 (plaintiff must identify in complaint statutory limitation on which it relies). Thus, the court concludes that defendants are acting in the sovereign capacity, not their individual capacities. *Id.*

---

1. Even if plaintiff could identify a statutory limitation on their authority to abrogate treaties, plaintiff has no standing to bring such a claim because it has failed to demonstrate that it is an indian tribe that was a party to a treaty. Such a failure constitutes failure to demonstrate that plaintiff has suffered or will suffer injury in fact. *See American Forest & Paper Assoc. v. United States Envtl. Protection Agency,* 154 F.3d 1155, 1158 (10th Cir.1998) (to establish jurisdiction, plaintiff must establish elements of standing, including injury in fact).

Plaintiff also invokes the second part of the *Larson* exception, alleging that defendants' authority is unconstitutional to the extent that it includes the authority to abrogate a treaty. Plaintiff, however, has not asserted a challenge to the constitutionality of the regulations in its second amended complaint.[2] The *Larson* case is inapplicable to any other alleged claims in this case because plaintiff does not allege action outside the scope of statutory authority or unconstitutional acts.

█ Plaintiff's only remaining basis for waiver of sovereign immunity is the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* Section 702 of the APA has been considered a general waiver of sovereign immunity with respect to injunctive or declaratory relief against federal agency action. *See Murdock Mach.*, 81 F.3d at 930 n. 8 (citing *United States v. Mitchell*, 463 U.S. 206, 227 n. 32, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)). "The terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Kelley v. U.S.*, 69 F.3d 1503, 1507 (10th Cir.1995). The APA provides a waiver of sovereign immunity to the extent that the claims involve judicial review of agency action and plaintiff complies with jurisdictional requirements. *See* 5 U.S.C. §§ 702 ("person suffering legal

wrong because of agency action ... entitled to judicial review thereof"), 704 (specifying jurisdictional limitations on review).

### B. FPASA and BIA Recognition Claims

█ Plaintiff requests a declaratory judgment that plaintiff is a previously recognized tribe, and that the SFAAP is excess property which must be distributed to plaintiff under 40 U.S.C. § 483. Plaintiff also requests that the court issue a writ of mandamus under 28 U.S.C. § 1361 directing the BIA to add plaintiff to its list of federally recognized tribes. As stated previously, plaintiff's only basis for waiver of sovereign immunity is the APA. "The availability of a remedy under the APA technically precludes [plaintiff's] request for a writ of mandamus." *Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir.1997). Accordingly, plaintiff's cause of action under 28 U.S.C. § 1361 is dismissed.

█ Neither declaratory judgment claim is ripe for adjudication under the APA. *See* 25 U.S.C. § 704 (limiting jurisdiction to review of "agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court"); *Ash Creek Mining Co. v. Lujan*, 934 F.2d 240, 243 (10th Cir.

**2.** Even if plaintiff had alleged such a claim, plaintiff again has no standing because it has not demonstrated that it was a party to a treaty. *See American Forest*, 154 F.3d at 1158 (requiring demonstration of injury in fact). Moreover, plaintiff could not state a claim that the regulations are an unconstitutional abrogation of the 1854 Treaty because defendant has taken no action to derecognize plaintiff or abrogate the treaty. The regulations simply require that, before a previously acknowledged tribe is eligible for government services, the tribe must prove its current identity as the tribe that was previously acknowledged. Such a requirement does not abrogate the treaty, but ensures that the party asserting treaty rights is the party entitled to those rights. The purpose of such a requirement is apparent in this case, where other bands of Shawnee Indians have previously been recognized as parties to the 1854 Treaty, and plaintiff claims that its potential members

constitute all blood descendants of the 1854 Treaty allottees, but plaintiff also claims that it is unrelated to the other bands. *See* 25 U.S.C. § 1031 (recognizing Absentee Band, Eastern Band, and Cherokee Band of Shawnee Indians as tribes entitled to funds resulting from judgment of inadequate compensation for lands ceded in 1854 Treaty); *Absentee Shawnee Tribe of Okla. v. U.S.*, 165 Ct.Cl. 510 (1964) (Absentee Shawnee Tribe entitled to pursue claims arising from 1854 Treaty on behalf of entire Shawnee Nation). Congress and the United States Supreme Court recognized such a concern. *See The Kansas Indians*, 5 Wall. 737, 72 U.S. 737, 755, 18 L.Ed. 667 (1866) (treaty rights remain intact only as long as tribal organization is preserved intact, and tribe is recognized by the political department); 25 U.S.C. § 479a–1 (BIA recognition essential to inclusion on list of tribes eligible for government services).

1991) (unripe if no final agency action). Neither the FPASA nor the BIA recognition regulations provide for judicial review of the agency's decisions. *See* 40 U.S.C. § 471 *et seq.;* 25 C.F.R. Pt. 83. "For an administrative order to be final, it must 'impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process.'" *Ash Creek Mining,* 934 F.2d at 243 (quoting *Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.,* 333 U.S. 103, 113, 68 S.Ct. 431, 92 L.Ed. 568 (1948)).

 Section 483 provides that GSA shall prescribe procedures to turn over excess property to the Department of the Interior on behalf of Indian groups recognized by the BIA. With respect to the § 483 excess property claim, plaintiff has failed to allege or establish through evidence that it or anyone on its behalf has filed a request with the General Services Administrator to receive the property as excess, or that GSA has rejected such a request. With respect to the BIA recognition claim, there has been no final agency action by the BIA denying recognition. Thus, the claims are unripe and the court has no jurisdiction over the excess property and recognition claims. *See Chemical Weapons Working Group, Inc. v. U.S. Dep't of the Army,* 111 F.3d 1485, 1494 (10th Cir.1997) (reviewable agency action is predicate to court's jurisdiction).

 In any event, the tribe's existence and previous acknowledgement is within the special expertise of the BIA. *See* 25 U.S.C. § 479a–1 (Secretary of Interior shall maintain list of federally recognized tribes); 25 C.F.R. § 83.8 (providing for recognition of applicant's previous acknowledgement upon submission of proof of previous acknowledgement). The court concludes that the BIA has primary jurisdiction over the recognition issues involved in the FPASA excess property claim.

### C. Constructive trust

 Plaintiff requests a declaratory judgment and a writ of mandamus that the reservation land be held in constructive trust for plaintiff arising from the 1854 Treaty that created the reservation. The APA is inapplicable here because plaintiff does not seek judicial review of any agency action. *See* 25 U.S.C. § 706 (waiver of sovereign immunity for judicial review of agency actions). Plaintiff has failed to show any other waiver of sovereign immunity regarding this claim. Therefore, the court lacks jurisdiction.

### D. NEPA Claim

Plaintiff requests a declaratory judgment and a writ of mandamus, challenging defendants' failure to produce an environmental impact statement under NEPA. The mandamus claim is precluded by the availability of review under the APA. *See Mt. Emmons Mining,* 117 F.3d at 1170. The remaining claim is unripe. Because the court's jurisdiction is premised solely on the APA, final agency action is a necessary predicate to the court's jurisdiction. *See* 5 U.S.C. § 704 (requiring final agency action); *Chemical Weapons Working Group,* 111 F.3d at 1494 (reviewable agency action under § 704 necessary to court's jurisdiction).

 Plaintiff relies on two alleged agency actions: (1) the October 1998 FONSI and (2) the February 1999 Environmental Assessment and draft FONSI. The 1998 FONSI was a final agency action. Any review of that action, however, is moot because the government revoked the authority given pursuant to that FONSI—the authority to enter into a facility-use agreement for use of Sunflower—after the property was deemed excess by GSA. *See Skokomish Indian Tribe v. GSA,* 587 F.2d 428, 431 (9th Cir.1978) (indicating that withdrawal of BIA request for excess property rendered review of rejection of request moot). Thus, the court has no jurisdiction to review that FONSI. *See Fletcher v. U.S.,* 116 F.3d 1315, 1321 (10th Cir.1997) (mootness is threshold jurisdictional question).

■ The February 1999 draft FONSI stated that "This FONSI will be signed and *become final* 30 days following its publication and a Notice of Availability of the Environmental Assessment and FONSI in local newspapers, provided no information leading to a contrary finding is received or comes to light during the 30–day period afforded for public review and comment." (emphasis added). The evidence indicates that the agency is currently considering additional comments and that no final FONSI or environmental impact statement has been issued. Accordingly, plaintiff has failed to establish final agency action and the court has no jurisdiction over the NEPA claim.

### E. IGRA and Legal Fees/Costs Claims

Plaintiff asserts a claim requesting declaratory judgment that plaintiff Shawnee Reserve No. 206 is "indian land" under the Indian Gaming Regulation Act, 25 U.S.C. § 2701 *et seq.*, and requesting a writ of mandamus that defendants designate the property as "indian land." Plaintiff also asserts a claim for legal fees and costs under 25 U.S.C. §§ 175 and 178. This mandamus claim is also precluded by the availability of review under the APA. *See Mt. Emmons Mining,* 117 F.3d at 1170. Moreover, plaintiff fails to allege in its complaint or establish through evidence that "final agency action" has occurred. Therefore, plaintiff's claims under IGRA and 25 U.S.C. §§ 175 and 178 are not ripe and the court lacks jurisdiction over the claims.

### III. Motion for a Preliminary Injunction

#### A. Findings of Fact

The court adopts the preceding factual background as the findings of fact pursuant to Fed.R.Civ.P. 52(a).

#### B. Conclusions of Law

■ A party seeking a preliminary injunction must show (1) a substantial like-lihood of success on the merits; (2) irreparable harm if the injunction were denied; (3) the balance of harms favors the moving party; and (4) the injunction will not be adverse to the public interest. *Sprint Spectrum, L.P. v. State Corp. Comm'n,* 149 F.3d 1058, 1060 (10th Cir.1998). The court has discretion to grant or deny a preliminary injunction, but the right to relief must be clear and unequivocal because a preliminary injunction is extraordinary relief. *Kansas Health Care Ass'n v. Kansas Dep't of Soc. and Rehab. Servs.,* 31 F.3d 1536, 1543 (10th Cir.1994).

#### 1. Success on the Merits

Plaintiff bases it motion on three specific claims: (1) the FPASA excess property claim; (2) the constructive trust claim; and (3) the NEPA claim. Plaintiff has failed to establish a substantial likelihood of prevailing on the merits of these claims because, as discussed previously, the court has no subject matter jurisdiction over the claims.

■ Even if the court had jurisdiction, plaintiff has failed to establish a substantial likelihood of success on the underlying merits of the claims. With respect to the FPASA excess property claim, plaintiff has failed to establish that it is an Indian tribe that has been previously acknowledged by the federal government. Plaintiff has simply failed to demonstrate that it is the same tribe that was a party to the 1854 Treaty. Such a failure also forecloses a substantial likelihood of success on the constructive trust claim pertains to the land that plaintiff claims to be entitled to as a result of the 1854 Treaty. With respect to the NEPA claim, plaintiff has failed to demonstrate that defendants failed to follow required procedures or that the challenged FONSI was incorrect. *See Ross v. Federal Highway Admin.,* 162 F.3d 1046, 1050 (10th Cir.1998) (agency actions reviewed to determine if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law"). Plaintiff has failed to establish a substan-

tial likelihood of success on the merits of the three claims asserted in support of the preliminary injunction.

### 2. Irreparable Harm, Balance of Harms, and Public Interest

The parties' arguments with respect to these factors are intertwined. Plaintiff claims that it will be irreparably harmed by defendants' sale of Sunflower to the state because, under the Eleventh Amendment, plaintiff will have no recourse against the state. Plaintiff contends disposal of Sunflower without an environmental impact statement will cause irreparable harm. Plaintiff also asserts that it will be irreparably harmed by sale of Sunflower because it will be precluded from asserting its rights to cultural and burial items under the Native American Graves Protection and Repatriation Act, 25 U.S.C. §§ 3001–13. The only evidence presented to the court indicated that no graves or skeletal remains were found on the property. In any event, the court need not determine if plaintiff has shown irreparable harm because all other factors favor defendants.

Plaintiff argues that these harms outweigh any harm to the government. The court disagrees. The government has established that it will suffer significant additional expenses related to maintenance and environmental cleanup if it is not allowed to dispose of Sunflower pursuant to the anticipated deal with the state of Kansas and the OZ Entertainment Company.

Plaintiff argues that the environmental impact statement is in the public interest. Defendants established that the injunction will be adverse to the public interest because of the additional expense, the potential loss of the deal, the continued tax-exempt status of Sunflower if the federal government keeps it, the effect on the federal recognition process, and the loss of land gifts to the local universities and the city of DeSoto, Kansas. The court concludes that the injunction will be adverse to the public interest. Plaintiff has failed to establish a substantial likelihood of success on the merits, that the balance of harms favors plaintiff, or that the injunction will not be adverse to the public interest. Accordingly, the motion for a preliminary injunction is denied.

IT IS, THEREFORE, ORDERED that plaintiff's motion (Doc. 19) for preliminary injunction is denied.

IT IS FURTHER ORDERED that defendants' motion to dismiss for lack of subject matter jurisdiction is granted.

Copies of this order shall be mailed to counsel of record for the parties.

The case is closed.

**IT IS SO ORDERED.**