**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 13 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

UNITED TRIBE OF SHAWNEE
INDIANS, a United States Treaty
Tribe, on our behalf and on behalf of
all individuals descended from all such
members receiving allotments under
the Treaty of 1854,

     Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA;
DEFENSE DEPARTMENT
SECRETARY, The Honorable William
S. Cohen; DEPARTMENT OF ARMY,
The Honorable Paul W. Johnson,
Deputy Assistant Secretary of the
Army; GENERAL SERVICES
ADMINISTRATION, The Honorable
David I. Barram, Administrator;
I. BLANE HASTINGS, Senior Reality
Officer, The Heartland Region,
General Services Administration;
DEPARTMENT OF INTERIOR,
Bruce Babbitt, Secretary; KEVIN
GOVER, Assistant Secretary-Indian
Affairs; BUREAU OF INDIAN
AFFAIRS, Nancy L. Jamison, Acting
Director, Office of Management and
Administration,

     Defendants-Appellees.

No. 00-3140

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 99-CV-2063-GTV)

Sean W. Pickett, Weber, Pickett & Gale, L.L.C., Kansas City, Missouri, and John W. Ragsdale, Jr., Prairie Village, Kansas, for Plaintiff-Appellant

Sean H. Donahue, Environment and Natural Resources Division, Appellate Section, Washington, D.C. (James F. Simon, Acting Assistant Attorney General, Jackie N. Williams, United States Attorney, Janice Miller Karlin, Assistant United States Attorney, Kansas City, Kansas, and Ellen Durkee, Environment and Natural Resources Division, Appellate Section, Washington, D.C., with him on the brief), for Defendants-Appellees.

Before **TACHA**, Chief Judge, **SEYMOUR** and **BRORBY**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

The United Tribe of Shawnee Indians (UTSI) brought this action for declaratory and mandamus relief against the United States, the Secretaries of Interior and Defense, and various federal administrative officials. UTSI sought a declaration of its status as a federally recognized Indian tribe, a mandate that it be included on the list of recognized tribes maintained by the Bureau of Indian Affairs, and a declaration that a constructive trust in its favor be placed on certain lands subject to disposition under the Federal Property and Administrative Services Act, 40 U.S.C. §§ 471 *et. seq.*[1] The district court granted defendants' motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), concluding that UTSI's claims were barred by the doctrines of sovereign immunity, ripeness, standing, and primary jurisdiction. *See United Tribe of Shawnee Indians v. United States*, 55 F. Supp. 1238 (D. Kan. 1999). UTSI appeals and we affirm.

# I

The facts underlying this litigation are set out in some detail in the district court opinion. We therefore recite only those necessary to our disposition of this

---

[1] UTSI also raised claims under the National Environmental Policy Act, 42 U.S.C. §§ 4331 *et seq.*, and the Indian Gaming Regulation Act, 25 U.S.C. §§ 2701 *et seq.*, and moved for a preliminary injunction. These matters were decided adversely to UTSI and it does not pursue them on appeal.

appeal. UTSI is made up of thirty members, all of whom are related to its representative, principal chief Jimmie D. Oyler. It is based in Kansas on land owned by Mr. Oyler, which was patented to his ancestors under the Treaty with the Shawnee, 10 Stat. 1053 (1854). UTSI claims it is a present-day continuation as a tribal entity of the Shawnee Tribe that entered into the 1854 Treaty.

In 1994, Mr. Oyler initiated proceedings with the Bureau of Indian Affairs (BIA) under 25 C.F.R. Pt. 83. These regulations provide the administrative process by which an Indian group can establish it exists as an Indian tribe, thereby becoming recognized by the federal government for purposes of the protection, benefits and services the government provides to tribes. *See* 25 C.F.R. § 83.2 (2000). Mr. Oyler abandoned these proceedings before the BIA had made a determination regarding whether UTSI was entitled to recognized status.

In 1998, federal officials began considering the potential disposal of the Sunflower Army Ammunition Plant as excess property. Part of this facility occupies land that was previously included in an Indian reservation created by the 1854 Treaty with the Shawnee. UTSI is based within three miles of the Sunflower Plant. The Federal Property and Administrative Services Act, which controls the management and disposal of government property, provides for the transfer to the Secretary of the Interior of

> excess real property located within the reservation of any group,
> band, or tribe of Indians which is recognized as eligible for services

by the Bureau of Indian Affairs. Such excess real property shall be held in trust by the Secretary for the benefit and use of the group, band, or tribe of Indians, within whose reservation such excess real property is located.

40 U.S.C. § 483(a)(2).

In the present lawsuit, UTSI seeks a judicial ruling that it is a recognized tribe by virtue of both the 1854 Treaty and the decision in *The Kansas Indians*, 72 U.S. 737, 756 (1866), which held that the Shawnee tribe existed as a recognized tribal entity in 1866. UTSI also requests that reservation land included in the Sunflower facility be placed in constructive trust for its benefit, alleging it is entitled to this equitable relief under section 483(a)(2) due to its asserted recognized status. The district court did not reach the merits of UTSI's claims. Instead the court dismissed for lack of jurisdiction, holding that the only basis for a waiver of defendants' sovereign immunity was provided by the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* (APA), and that UTSI's claims were not ripe for review under the APA because no final agency action had been taken.

On appeal, UTSI contends the district court erred in failing to conclude this case falls within the exception to sovereign immunity discussed in *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682 (1949). UTSI also asserts that the lack of a final order is irrelevant to its ability to proceed because it is not asserting claims directly under the APA. Because we view these two issues as

dispositive of this appeal, we need not address the remaining claims made by UTSI.

## II

Motions to dismiss under Rule 12(b)(1) may take one of two forms. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint. *Id.* In addressing a facial attack, the district court must accept the allegations in the complaint as true. *Id.* "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id.* at 1003. In addressing a factual attack, the court does not "presume the truthfulness of the complaint's factual allegations," but "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

It appears from the record on appeal that defendants mounted a factual, rather than a facial, challenge to subject matter jurisdiction below. "Accordingly, we review the district court's dismissal for lack of subject matter jurisdiction de novo[, and its] findings of jurisdictional facts for clear error." *Id.*

**III**

We turn first to UTSI's argument that sovereign immunity is waived here under the holding in *Larson*. The United States as a sovereign is immune from suit unless it consents to be sued. *See United States v. Murdock Mach. & Eng'g Co.*, 81 F.3d 922, 929 (10th Cir. 1996). This immunity extends to injunctive relief such as that sought here; absent express provision, a court has no jurisdiction to either restrain the government from acting or compel it to act. *See id.*; *see also In re Talbot*, 124 F.3d 1201, 1206 (10th Cir. 1997). "Any waiver 'must be construed strictly in favor of the sovereign and not enlarged beyond what [its] language requires.'" *Talbot*, 124 F.3d at 1206 (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992)).

In *Larson*, the Supreme Court recognized an exception to sovereign immunity under the ultra vires doctrine.

> [W]here the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are ultra vires his authority and therefore may be made the object of specific relief.

*Larson*, 337 U.S. at 689.

UTSI contends that the BIA's actions in refusing to accord it status as a recognized tribe and enter it on the list of recognized tribes is outside the limit on the BIA's authority imposed by the Federally Recognized Indian Tribe List Act of

1994, Pub. L. No. 103-454, 108 Stat. 4791 (1994) (codified at 25 U.S.C. § 479a).

Section 103 of that Act provides:

> (3) Indian tribes presently may be recognized by Act of Congress; by the administrative procedures set forth in part 83 of the Code of Federal Regulation denominated "Procedures for Establishing that an American Indian Group Exists as an Indian Tribe;" or by a decision of a United States court;
> (4) a tribe which has been recognized in one of these manners may not be terminated except by an Act of Congress.

25 U.S.C. § 479a (note). UTSI argues that because the Shawnee tribe was recognized as a tribal entity by Congress in the 1854 Treaty and by the Supreme Court in *The Kansas Indians*, the BIA acted outside the limits on its authority by refusing to list UTSI as a recognized tribe, which effectively terminated its existing recognition contrary to section 103.

UTSI's argument assumes the very factual issue at the heart of this litigation. UTSI can only prevail on its contention if we accept its bare assertion that it is the present-day embodiment of the Shawnee Tribe. The only evidence even arguably offered by UTSI to support this proposition is the fact that UTSI is based on land patented to Mr. Oyler's ancestor by the Treaty. While this fact may establish that Mr. Oyler's ancestor was a member of the Shawnee tribe and that Mr. Oyler is therefore a descendant of a tribal member, it says nothing about whether UTSI has maintained its identity with the Shawnee tribe and has continued to exercise that tribe's sovereign authority up to the present day. While

the 1854 Treaty and *The Kansas Indians* recognized the sovereignty of the Shawnee Tribe in the nineteenth century, those events without more do not speak to the status of UTSI today.  Because UTSI has failed to allege facts demonstrating that the BIA's failure to recognize it or place it on the list of recognized tribes is ultra vires, that doctrine does not provide a basis for the waiver of sovereign immunity under *Larson*.[2]

Moreover, *Larson* provides an alternative ground for our conclusion that UTSI may not rely on the ultra vires doctrine.  Reliance on the doctrine

> may fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property.

*Painter v. Shalala*, 97 F.3d 1351, 1359 (10th Cir. 1996) (quoting *Larson*, 337 U.S. at 691 n.11).  UTSI requests that the BIA be directed to accord it status as a recognized tribe and to place it on the list of recognized tribes.  UTSI also asks the court to place government property in a constructive trust for its benefit.

---

[2] The district court approached the ultra vires doctrine by determining that UTSI had no standing to claim the BIA had abridged the treaty rights of the Shawnee tribe because UTSI failed to demonstrate it was a party to that treaty. *See United Tribe of Shawnee Indians*, 55 F. Supp.2d 1238, 1243 n.1, 1244 n.2 (D. Kan. 1999).  In view of our determination that UTSI has not alleged sufficient facts to show a waiver of sovereign immunity under *Larson*, we need not address UTSI's arguments on appeal directed to standing.  We note, however, that standing issues are clearly implicated by UTSI's insufficient factual allegations.

Because this requested relief would require us to order federal officials to take various forms of affirmative action and affect the disposition of sovereign property, the suit does not fall within the ultra vires doctrine.

Finally and perhaps most significantly, the Court in *Larson* took pains to point out that the ultra vires doctrine is grounded on "the officer's *lack* of delegated power. A claim of error in the *exercise* of that power is therefore not sufficient." *Larson*, 337 U.S. at 690 (emphasis added). The mere allegation that the official acted wrongfully "does not establish that the officer, in committing that wrong, is not exercising the powers delegated to him by the sovereign. If he is exercising such powers the action is the sovereign's and a suit to enjoin it may not be brought unless the sovereign has consented." *Id.* at 693.

The BIA has been delegated the authority to determine whether recognized status should be accorded to previously unrecognized tribes. *See* H.R. REP. NO. 103-781, at 3 & n.10 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3768, 3769-70; *see also* 25 C.F.R. Pt. 83. Thus any action taken by the BIA with respect to determining whether UTSI is entitled to recognized status is within its delegated authority, and therefore not ultra vires, notwithstanding UTSI's assertion that the BIA is wrongfully withholding such status. UTSI cannot invoke the ultra vires doctrine by attempting to equate the BIA's current failure to accord it recognized status with the termination of recognized status previously given.

## IV

UTSI also contends sovereign immunity is waived by the APA. The district court held that UTSI'S claims for tribal recognition and inclusion on the list of recognized tribes were not ripe for review under the APA because there had been no final agency action. The court further held that because the question of the tribe's asserted existence and previous acknowledgment are within the BIA's special expertise, the agency has primary jurisdiction over the recognition issues involved in UTSI's claim regarding the Sunflower facility. Finally, the court held that sovereign immunity over UTSI's request for a constructive trust was not waived by the APA because that claim did not seek review of any agency action.

The APA contains an express waiver of sovereign immunity for actions brought against the United States by providing that

> [a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. . . . Nothing herein . . . affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground . . . .

5. U.S.C. § 702. The APA provides that agency action is judicially reviewable in two instances: when it is "made reviewable by statute" and when it constitutes

-11-

"final agency action for which there is no other adequate remedy in a court." *Id.* § 704. UTSI has not identified any other statute which provides for judicial review of the official conduct it challenges, and thus any attempt to obtain judicial review directly under section 704 of the APA must be preceded by a final agency action. *See, e.g., Ash Creek Mining Co. v. Lujan*, 934 F.2d 240, 243 (10th Cir. 1991).

UTSI contends it is not proceeding directly under the APA and that its claims are therefore not affected by the lack of a final order. It further asserts that the APA's waiver of sovereign immunity applies to all civil claims against the United States and is not limited to actions seeking judicial review of final agency action.

It is true, as UTSI asserts, that section 702 has been held to provide a general waiver of sovereign immunity in all civil actions seeking equitable relief on the basis of legal wrongs for which governmental agencies are accountable. *See, e.g., United States v. Mitchell*, 463 U.S. 206, 227 & n.32 (1983); *Murdock Machine*, 81 F.3d at 929 n.8; *The First Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 523-26 (9th Cir. 1989); *Clark v. Library of Congress*, 750 F.2d 89, 102 (D.C. Cir. 1984). This fact alone does not allow UTSI's claims to proceed. First, even if we assume that section 702 provides a waiver of sovereign immunity, UTSI has failed to identify any federal statute other than the APA itself

-12-

that provides an express or implied cause of action in its favor.[3]  Second, in cases not governed by the APA, the doctrine of exhaustion applies as a matter of judicial discretion.  *See Darby v. Cisneros*, 509 U.S. 137, 153-54 (1993); *Committee of Blind Vendors v. District of Columbia*, 28 F.3d 130, 134 (D.C. Cir. 1994).  As we discuss below, the policies underlying the exhaustion doctrine dictate that it be required here.

## V

"The doctrine of exhaustion of administrative remedies is one among related doctrines–including abstention, finality, and ripeness–that govern the timing of federal-court decisionmaking."  *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).  Exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency."  *Id.* at 145.

> As to the first of these purposes, the exhaustion doctrine recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer.  Exhaustion concerns apply with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise.

*Id.*

---

[3] We note that the federal officials named in this suit were sued only in their official capacities.

We have indicated that exhaustion is required when, as here, a plaintiff attempts to bypass the regulatory framework for establishing that an Indian group exists as an Indian tribe. *See Western Shoshone Bus. Council v. Babbitt*, 1 F.3d 1052, 1056-58 (10th Cir. 1993). In *Western Shoshone* we pointed out that "[t]he judiciary has historically deferred to executive and legislative determinations of tribal recognition," and that continuing such deference is justified by Congress' broad power over Indian affairs. *Id.* at 1057. We were strongly persuaded in this matter by the decision in *James v. United States Dep't of Health and Human Serv.*, 824 F.2d 1132 (D.C. Cir. 1987), in which the court expressly held exhaustion to be mandated in circumstances virtually indistinguishable from those before us.

In *James*, a group of Indians sought a declaratory judgment in federal court that the failure to include it on the list of recognized tribes was contrary to law, and requested an order directing that it be placed on the list. The Department of Interior moved to dismiss on the ground that the group had not exhausted available administrative remedies, contending "that because [the group] had not applied for recognition under its published rules and regulations, [it was] not entitled to a judicial declaration that [it] was federally recognized." *Id.* at 1135. In that case, as here, the group relied on historical events to assert that it was

-14-

already federally recognized and that it therefore need not exhaust administrative channels. The court was not persuaded.

> [T]he determination whether these documents adequately support the conclusion that the [group was] federally recognized in the middle of the nineteenth century, or whether other factors support federal recognition, should be made in the first instance by the Department of the Interior since Congress has specifically authorized the Executive Branch to prescribe regulations concerning Indian affairs and relations. 25 U.S.C. §§ 2, 9. The purpose of the regulatory scheme set up by the Secretary of the Interior is to determine which Indian groups exist as tribes. 25 C.F.R. § 83.2. That purpose would be frustrated if the Judicial Branch made initial determinations of whether groups have been recognized previously or whether conditions for recognition currently exist.

*Id.* at 1137.

We agree. Determining whether a group of Indians exists as a tribe is a matter requiring the specialized agency expertise the Court considered significant in *McCarthy*, 503 U.S. at 145. Moreover, the judicial relief UTSI requests would frustrate Congress' intent that recognized status be determined through the administrative process. Finally, exhaustion "may produce a useful record for subsequent judicial consideration, especially in a complex or technically factual context." *Id.* at 145. These factors argue compellingly for requiring exhaustion.

The circumstances identified by the Court in *McCarthy*, where the interest of the individual in obtaining prompt access to a judicial forum may outweigh requiring exhaustion, are not present here. First, any current prejudice to UTSI from the delay due to requiring exhaustion is the result of UTSI's own decision

years ago to abandon the administrative process before it was completed. Second, there is no doubt that the agency is empowered to grant the relief UTSI seeks. Third, nothing in the record before us indicates that the administrative body is biased or has otherwise predetermined the issue. While the exchange of correspondence between UTSI and the agency reveals that UTSI's submissions were not adequate, the agency assured UTSI that it stood ready to work closely with it to help identify deficiencies and give it the opportunity to strengthen its petition for recognition. *See* Aplee. Supp. App. at 33-34. In our judgment, requiring exhaustion is appropriate here.

**VI**

In sum, we conclude the ultra vires doctrine does not provide a waiver of sovereign immunity. We further conclude that even if immunity is waived by the APA with respect to UTSI's claims, UTSI must first exhaust its administrative remedies. Because we hold that UTSI must proceed administratively with its claim that it is entitled to status as a recognized tribe, and because only recognized tribes are eligible for consideration under section 483(2) of the

-16-

Federal Property and Administrative Services Act, UTSI's claim under that provision is not ripe for judicial review.[4]

The judgment of the district court is **AFFIRMED**.

---

[4] We also note that UTSI could seek review under the APA of any administrative decision on its request to have reservation land within the Sunflower facility placed in trust for its benefit. UTSI's requested mandamus relief is therefore precluded. *See Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997).