David **HOLT, as Personal Representative of the Estates of James W. Holt and Joan Holt, deceased, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 93–5218.

United States Court of Appeals, Tenth Circuit.

Jan. 30, 1995.

---

Michael D. Parks of Stipe, Gossett, Stipe, Harper, McCune & Parks, McAlester, OK, for plaintiff-appellant.

Peter Bernhardt, Asst. U.S. Atty. (Stephen C. Lewis, U.S. Atty., with him on the brief), Tulsa, OK, for defendant-appellee.

Before BALDOCK and BRORBY, Circuit Judges, and KANE, District Judge.[*]

BALDOCK, Circuit Judge.

Plaintiff David Holt appeals the district court's dismissal of his complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

The instant dispute involves a fatal automobile accident which occurred on Oklahoma

---

[*] The Honorable John L. Kane, Jr., Senior United States District Judge for the District of Colorado, sitting by designation.

State Highway 151 where it traverses Keystone Dam ("the Dam"), near Tulsa, Oklahoma.[1] The Dam is a multi-purpose facility forming Keystone Lake and managed by the United States Army Corps of Engineers ("the Corps") as part of a system of eleven reservoirs comprising the Arkansas River Basin. In carrying out its management duties, the Corps monitors the water level of Keystone Lake to determine how much water to release downstream into the Arkansas River. Portals called "powerhouse turbines" at the base of the Dam and "tainter gates" at the top of the Dam allow the discharge of water through the Dam. Releases made through tainter gates create a mist or spray as the water falls approximately seventy-five feet to the downstream surface of the Arkansas River.

In order to control the release of water through the Dam, the Corps has implemented a water control plan designed to meet flood control and specific navigational objectives of the Arkansas River Basin. Under the plan, water contained in the Dam's flood control pool is released within prescribed limits by taking into account the level of reservoirs comprising the Arkansas River Basin. Through these releases, the Corps is able to evacuate the flood control pool in Keystone Lake and achieve desired water levels in the Arkansas River Basin.

On December 25, 1991, the level of Keystone Lake had risen eight feet above the minimum flood control pool level of 723 feet. As a result, the Corps began to release water through the powerhouse turbines and the tainter gates. Under the existing freezing conditions, mist created from water released through the tainter gates formed an ice slick on the portion of Highway 151 which traverses the Dam. While travelling in the northbound lane of Highway 151, Plaintiff's parents were killed when an on-coming vehicle slid on the ice slick, crossed the median line, and struck the decedents' car.

On July 14, 1992, Plaintiff sued the United States in federal district court pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671. In his complaint,

Plaintiff alleged that the Corps was negligent when it failed: (1) to warn the public and the Oklahoma Department of Transportation of the icy road conditions, and (2) to clear the hazardous road conditions.

On September 30, 1992, the government filed a motion to dismiss for lack of subject matter jurisdiction or in the alternative for summary judgment. The district court dismissed the action for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), holding that the government was immune from liability under the Flood Control Act of 1928 ("the Act"), 33 U.S.C. § 702c. This appeal followed.

On appeal, Plaintiff contends the government is not immune from liability under § 702c of the Act. Specifically, Plaintiff contends the government has failed to establish a nexus between the injuries sustained by the decedents and flood control activities at the Dam sufficient to invoke the protective immunity of the Act.

### I.

As an initial matter, we must determine our standard of review. Plaintiff contends that the district court's dismissal pursuant to Rule 12(b)(1) should be treated as one for summary judgment under Fed.R.Civ.P. 56 because matters outside the pleadings were received and considered. Under the summary judgment standard, Plaintiff contends the district court erroneously resolved a disputed material fact concerning whether the waters which formed the ice slick were released for navigational or flood control purposes. We disagree.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990). In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. *Id.*

---

1. On September 1, 1965, the Secretary of the Army granted Oklahoma a perpetual easement of right-of-way over the Dam, which subsequently became part of Oklahoma State Highway 151.

Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. *Id.* When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. *Id.* A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). *Id.; Wheeler v. Hurdman,* 825 F.2d 257, 259 n. 5 (10th Cir.), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion. *Wheeler,* 825 F.2d at 259 n. 5.

However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. *Id.* at 259; *see also Redmon v. United States,* 934 F.2d 1151, 1155 (10th Cir.1991). The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case. *Wheeler,* 825 F.2d at 259.

In the instant case, Defendant's Rule 12(b)(1) motion did not mount a mere facial challenge to the complaint, but instead raised a factual challenge to the existence of subject matter jurisdiction. Specifically, Defendant claimed that waters which caused the ice slick to form on Highway 151 were in fact released for flood control purposes, rendering the government immune from suit under § 702c of the Act. Consequently, unless the jurisdictional issue is intertwined with the merits of Plaintiff's case, the district court properly considered evidence outside of the pleadings and resolved factual disputes without converting the motion into a Rule 56 motion. Here, resolution of the jurisdictional issue—*i.e.,* whether the government is immune from suit under § 702c of the Act— does not depend on the FTCA which provides the substantive claims in the case. Thus, the district court properly treated the government's motion as one brought pursuant to Rule 12(b)(1). *See, e.g., McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir. 1988) (district court properly considered the question of governmental immunity under the Flood Control Act pursuant to a Rule 12(b)(1) motion), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989).

Accordingly, we review the district court's dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) de novo. *Williams v. United States,* 957 F.2d 742, 743 (10th Cir.1992). We review the district court's findings of jurisdictional facts for clear error. *Ohio Nat'l Life,* 922 F.2d at 326 ("Where a trial court's ruling on jurisdiction is based in part on the resolution of factual disputes, a reviewing court must accept the district court's findings unless they are 'clearly erroneous.' ").

## II.

Having determined our standard of review, we next address Plaintiff's contention that the district court erred in determining the government was immune from suit under § 702c of the Act. Section 702c states in pertinent part, "No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place...." Under this provision, the district court determined that immunity applied because waters released from the Dam for flood control purposes formed the ice slick which resulted in the accident.

The Supreme Court has broadly construed the immunity offered by § 702c in *United States v. James,* 478 U.S. 597, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986). In *James,* recreational users of a reservoir drowned when the Corps released water through a dam for the purpose of controlling flooding. The Court held that § 702c immunized the government from suit in an action for personal injuries caused by "waters contained in or carried through a federal flood control project for purposes of or related to flood control, as well as to waters that such projects cannot control." *Id.* at 605, 106 S.Ct. at 3121. However, in a footnote, the Court cited with approval two circuit court opinions

suggesting that § 702c immunity would not be available if a plaintiff could show the harm suffered was "wholly unrelated" to flood control. *Id.* at 605 n. 7, 106 S.Ct. at 3121 n. 7.

Following the Supreme Court's decision in *James,* we decided *Boyd v. United States ex rel. United States Army Corps of Eng'rs,* 881 F.2d 895 (10th Cir.1989). In *Boyd,* the plaintiff's decedent was struck by a boat while snorkeling in a lake under the jurisdiction and control of the Corps. *Id.* at 896. We rejected the government's claim of immunity under § 702c, holding that the government had failed to show a sufficient nexus between flood control activities and the injuries sustained by the plaintiff. *Id.* at 900. Without setting forth "every conceivable situation" in which a proper nexus could be established, we simply noted the requisite nexus had not been established under the particular facts of the case. *Id.* Rather, the injuries suffered as a result of being struck by a boat while snorkeling in a lake were more properly "associated with operating a recreational facility" than with flood control operations. *Id.*

In adopting the nexus approach, we expressly rejected the rationale espoused by the Ninth Circuit in *McCarthy v. United States,* 850 F.2d 558, 562 (9th Cir.1988), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989). *Boyd,* 881 F.2d at 900. In *McCarthy,* the Ninth Circuit relied on *James* and held that § 702c immunity presumptively applies unless the plaintiff establishes that the damage or injury was "wholly unrelated" to a congressionally authorized flood control project. *See McCarthy,* 850 F.2d at 563. In *Boyd,* we criticized the "wholly unrelated" approach because it created a "but for" connection between flood control activity and the injury occurring at a flood control project—*i.e.,* "if the injury would not have occurred but for the creation of a flood control lake, the government is immune." *Boyd,* 881 F.2d at 900. Under these circumstances, we determined that "[s]uch a connection ... is too attenuated to warrant the invocation of § 702c." *Id.*[2]

We condensed the reasoning of *James* and *Boyd* into a two-pronged test for establishing governmental immunity under § 702c in *Williams v. United States,* 957 F.2d 742 (10th Cir.1992). In *Williams,* we held that a court must examine whether (1) there is " 'a flood control project' that triggers the Act," and (2) a nexus exists between flood control activities and the injuries sustained. *Id.* at 743 (citing *Boyd,* 881 F.2d at 900). The inquiry under the nexus prong is primarily a factual one whereby a court must determine "the nature of the activity creating the nexus with the injury." *Id.* at 744. Once this two-pronged test has been met, the government is immune from suit under § 702c. *Id.* at 743.

Applying the *Williams* test to the instant case, the parties agree that the Dam is a flood control project "within the ambit of the statute." *James,* 478 U.S. at 605, 106 S.Ct. at 3121. However, the parties disagree that the requisite nexus between flood control activities and the injuries sustained at the Dam has been shown. Plaintiff contends that the government failed to show the required nexus between flood control activities and the injury to decedents. Specifically, Plaintiff argues that the release of water which caused the ice slick to form on Highway 151 was made for navigational rather than flood control purposes. In support of this contention, Plaintiff relies on the Corps' water control plan which requires that water contained in the Dam's flood control pool be used for purposes of regulating navigation in

---

2. Other circuits have rejected *Boyd*'s disapproval of the wholly unrelated standard and its determination that government operation of a dam as a recreational facility does not provide sovereign immunity. *See Bailey v. United States Dept. of Army Corps of Eng'rs,* 35 F.3d 1118, 1121 (7th Cir.1994) (*Boyd*'s "rationale would appear directly contrary to *James.*"); *Zavadil v. United States,* 908 F.2d 334, 336 n. 4 (8th Cir.1990) (indicating *Boyd*'s view has been repeatedly rejected by other circuits) (citing cases), *cert. denied,* 498 U.S. 1108, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991); *Dawson v. United States,* 894 F.2d 70, 73 (3d Cir.1990) ("To the extent *Boyd* reexamines the meaning of section 702c and its legislative history, it is contrary to the binding pronouncement by the Supreme Court in *James* and thus we decline to follow it."). Nevertheless, we are bound to apply *Boyd* and its progeny in the instant case. *See O'Driscoll v. Hercules, Inc.,* 12 F.3d 176, 178 n. 1 (10th Cir.1994) (citation omitted) ("[A] three judge panel cannot disregard or overrule circuit precedent.").

the Arkansas River Basin. Aplt.App. at 77–82, 151–54. The government disagrees and contends that the release which caused the ice slick was made as part of flood control activity.

We conclude the government has shown a sufficient nexus between flood control activities at the Dam and the injuries suffered by the decedents so that § 702c immunity bars Plaintiff's lawsuit. The record indicates the Dam was created in part, for flood control purposes. As the resident engineer for Reservoir Control at the Dam testified, flood control operations do not occur only when a major flood is imminent. Rather, flood control operations include redistributing inflows in the Dam's flood control pool downstream into the Arkansas River Basin thereby meeting navigational needs. In making these discharges, the Corps examines the conditions and water levels of the Arkansas River reservoir system and "determine[s] how much discharge should be made ... to achieve ... target flows called for by the System Operating Plan." Aplee. App. at 303. These discharges allow the Corps to evacuate the Dam's flood control storage in preparation for future, subsequent flooding while at the same time meeting the specific navigational needs of the Arkansas River Basin system. Aplee. App. at 16, 311.

In the instant case, the releases which caused the ice slick to form on Highway 151 were made in order to evacuate the Dam's "flood control storage." Aplee. App. at 316. Despite Plaintiff's contentions to the contrary, merely because the released waters were also used for navigational purposes downstream does not negate the underlying flood control purpose of the release. We therefore hold that the government has established the requisite nexus between flood control activities and the injuries sustained by the decedents. *Boyd*, 881 F.2d at 900. As a result, the government is immune from suit under § 702c. *Accord Zavadil*, 908 F.2d at 336 (finding § 702c immunity where the dam's water level was being monitored for both flood control and navigational purposes).

**3.** Having determined the government is immune from suit under § 702c of the Act, we need not address the government's alternative argument

Thus, the district court correctly dismissed this action for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).[3]

AFFIRMED.

that the discretionary function exception to the FTCA bars Plaintiff's lawsuit.