Tammy K. HARTMAN, Plaintiff,

v.

GOLDEN EAGLE CASINO, INC., Defendant.

Randy Rodvelt, Plaintiff,

v.

Golden Eagle Casino, Inc., Defendant.

Nos. 01–4128–RDR, 01–4129–RDR.

United States District Court, D. Kansas.

Jan. 8, 2003.

Tammy K Hartman, Whiting, KS, Robert A. Coulthard, Topeka, KS, Randy Rodvelt, Horton, KS, Robert A. Coulthard, Topeka, KS, for plaintiffs.

Charley L. Laman, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

These are employment discrimination cases arising from the Golden Eagle Casino. These cases were originally filed by the plaintiffs proceeding pro se. They have since retained counsel. These matters are presently before the court upon the defendant's motion to dismiss. The court has heard oral argument and is now prepared to rule.

### I.

In its motion, the defendant contends that the court lacks subject matter jurisdiction over these actions. The defendant argues that the Tribe, not the Casino, is the real party in interest. Based upon that argument, the defendant contends it is entitled to sovereign immunity. Alternatively, the defendant asserts that each plaintiff must exhaust her remedies either administratively or judicially at the tribal court level before proceeding to federal court.

The standards that must be applied to a motion to dismiss for lack of subject matter jurisdiction under Fed. R.Civ.P. 12(b)(1) are well-settled. Rule 12(b)(1) motions generally take one of two forms. First, a moving party may make a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir.1995) (internal citation omitted). In reviewing a facial attack, the district court must accept the allegations in the complaint as true. *Id.* Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based. *Id.* at 1003. The defendant here chose the second form of attack, offering affidavits in support of its factual attack to subject matter jurisdiction. In reviewing a factual attack, a court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.* In the course of a factual attack under Rule 12(b)(1), a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion. *Id.*

### II.

Plaintiffs, who are not Indians, were employed at the Golden Eagle Casino. Tammy Hartman worked as a security guard at the casino until May 15, 2001. Randy

Rodvelt was employed as a security supervisor until on or about May 29, 2001. Hartman contends that she was discriminated against by the defendant based upon her sex, race and national origin. She also claims that she was subjected to a hostile work environment and was constructively discharged after being physically assaulted twice by a co-worker. Rodvelt also contends that he was discriminated against because of his sex, race and national origin. He further alleges that he was also the victim of a hostile work environment and constructively discharged from his employment. Plaintiffs seek damages based upon Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[1]

The Golden Eagle Casino is owned and operated by the Kickapoo Tribe of Kansas ("Tribe"). The Tribe is a federally recognized Indian tribe with its reservation located in northeast Kansas. In 1995, the Tribe entered into a Gaming Compact (Compact) with the State of Kansas, which allowed the Tribe to conduct gaming on its reservation. The Tribe operates the Casino, a Class II gaming facility, pursuant to the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2701 et seq.

Hartman has previously filed other actions arising from her employment with the Golden Eagle. In 1998, she filed an action in Kickapoo Tribal Court in which she alleged wrongful suspension and deprivation of her due process rights. Following an adverse ruling, she appealed. In 1999, she filed a civil action in this court asserting essentially the same claims that

she raised in tribal court. In 2001, Judge Dale Saffels dismissed her case. See *Hartman v. Kickapoo Tribe Gaming Comm.*, 176 F.Supp.2d 1168 (D.Kan.2001). She has appealed that ruling and the appeal remains pending.[2]

### III.

■■■ Arguments of sovereign immunity and subject matter jurisdiction are inextricably intertwined. Sovereign immunity is a matter of subject matter jurisdiction. *E.F.W. v. St. Stephen's Indian High School,* 264 F.3d 1297, 1302 (10th Cir. 2001). "Indian tribes are domestic dependent nations that exercise inherent sovereign authority over their members and territories. As an aspect of this sovereign immunity, suits against tribes are barred in the absence of an unequivocally expressed waiver by the tribe or abrogation by Congress." *Id.* at 1304 (quoting *Fletcher v. United States,* 116 F.3d 1315, 1324 (10th Cir.1994)).

### IV.

Plaintiffs raise a variety of arguments in response to the defendant's motion to dismiss. These arguments can be characterized as creative and passionate. Nevertheless, they are all lacking in merit.

Plaintiffs initially suggest that Title VII allows the assertion of a claim by them under the circumstances of these cases. Although this contention is urged by the plaintiffs, it is not pressed with great sincerity because most of the plaintiffs' argu-

---

**1.** In their original pro se complaints, plaintiffs also relied upon 42 U.S.C. §§ 1981 and 1983 as bases for their claims. Plaintiffs, however, have made no reference to either of these statutes in their briefs or during oral argument. The court assumes that plaintiffs have abandoned any such claims. To the extent that they are still being alleged, the court does not find that either statute provides a jurisdictional basis for this action. See *Chapoose v.*

*Hodel,* 831 F.2d 931, 934–35 (10th Cir.1987); *Wardle v. Ute Indian Tribe,* 623 F.2d 670, 673 (10th Cir.1980).

**2.** At oral argument the defendant suggested, based on her prior case, that Hartman's claims in this case were barred by res judicata. This argument was not raised in its motion to dismiss, so the court has not considered it.

ment is based upon the notion that no remedy presently exists that allows them to proceed against the Tribe for employment discrimination.

Plaintiffs begin initially with a contention that they have properly stated a claim under Title VII. As noted above, these actions involve claims against an Indian tribe. Title VII does not allow private employment discrimination claims against Indian tribes because it specifically exempts Indian tribes from the definition of employer. 42 U.S.C. § 2000e(b); see also *Morton v. Mancari,* 417 U.S. 535, 547–48, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). Plaintiffs contend that Title VII does provide coverage for them because the Casino is an economic enterprise or commercial activity of the Tribe. Plaintiffs, relying upon *EEOC v. Karuk Tribe Housing Authority,* 260 F.3d 1071 (9th Cir.2001), assert that the Title VII exemption for Indian Tribes concerns only those employees involved in "purely internal matters" related to the tribe's self-governance. The court has found no support for this distinction in the legislative history of Title VII or the case law interpreting it. The exclusion of Indian Tribes from the definition of employer has been applied to economic entities of Indian Tribes. See, e.g., *Duke v. Absentee Shawnee Tribe of Oklahoma Housing Authority,* 199 F.3d 1123, 1125 (10th Cir.1999) (housing authority designed to further Tribe's economic interest was deemed Tribe under Title VII even though created as state agency under Oklahoma law rather than by tribal ordinance); see also *Thomas v. Choctaw Management/Services Enterprise,* 313 F.3d 910, 2002 WL 31680819 (5th Cir.2002) (unincorporated business venture owned 100% by Tribe is an "Indian Tribe" expressly exempted from being employer under Title VII).

Plaintiffs next assert they are entitled to bring this action based upon the Compact entered into between the Tribe and the State of Kansas. Plaintiffs contend that they are entitled to bring claims because they are third-party beneficiaries of the Compact. This argument has several facets, all somewhat confusing and many contradictory.

Plaintiffs begin by arguing that the State of Kansas has illegally abrogated their rights to bring employment discrimination claims because the Compact failed to provide employees of the Casino with such rights. This argument is purportedly based upon the Supreme Court's decision in *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

In Alexander, the Supreme Court held that a plaintiff does not waive the right to a trial de novo on a Title VII claim by first pursuing a grievance and arbitration under a collective bargaining agreement's nondiscrimination clause. 415 U.S. at 51–52, 94 S.Ct. 1011. The Court determined that an employee's rights under Title VII cannot be prospectively waived through a union contract. *Id.*

Alexander has no application here for several reasons. Alexander did not deal with an employee of an Indian tribe. As noted previously, employees of Indian tribes are specifically exempted under Title VII. Moreover, Indian tribes, as sovereigns, have the power to establish the rights of their employees. In order for their employees to have any rights, the Tribe must either waive their sovereign immunity or Congress must abrogate it. The State of Kansas has no power to do either. Accordingly, we do not find that Alexander provides any basis for the plaintiffs' contention. In addition, we find no support for it in any other case law.

Plaintiffs next suggest that the Compact did in fact provide for a remedy for employees of the Casino because of the lan-

guage used in Section 26(D). The nature of this argument is so unusual that we must pause to decide whether to even mention it. Nevertheless, we plunge on to examine each and every argument asserted by the plaintiffs.

Section 26(D) of the Compact provides as follows:

All key employees, standard gaming employees and on-gaming employees shall be covered by Unemployment Compensation and Workers Compensation benefits equivalent to that provided by state law.

Plaintiffs' position is that this section must be read as follows: "all ... employees ... shall be covered by ... benefits equivalent to that provided by state law." Of course, there are a number of problems with this contention. First, and foremost, the language must be read in a tortured way to reach the result sought by plaintiffs. Certain language must be omitted and the rest must be read out of context. Second, and a more fundamental problem, the language fails to mention how this section constitutes a waiver of immunity concerning Title VII, a federal law. At best, and again this is almost laughable, this section, even under the twisted reading put forth by the plaintiffs, only purports to allow employees coverage based upon state law. Here, plaintiffs have not asserted any claims under state law. Regardless of this flaw, the court finds no merit to this contention. The court is not persuaded that Section 26(D) provides any coverage to employees for claims arising under Title VII. Section 26(D) simply entitles gaming employees to the same unemployment and workers' compensation benefits received by other employees in Kansas.

Plaintiffs next contend that, even if Section 26(D) does not provide coverage to plaintiffs for employment discrimination claims under Title VII, the court should impose such coverage because the Compact, as a contract, has omitted a necessary term. The court finds it unnecessary to career about on the path of this argument because it leads nowhere. In order to avoid sovereign immunity, plaintiffs must show that the Tribe either waived it or Congress abrogated it. The court cannot find that either has occurred here. The Compact does not expressly waive immunity, and the laws allowing for gaming contracts between the States and the Tribes do not abrogate it.

Finally, plaintiffs repeatedly assert that no remedy exists here and, therefore, in the interests of justice, the court should impose one. Plaintiffs have provided the court with a variety of alternatives to make this suggestion happen. The court is confident that the law, as it presently exists, allows for none of these alternatives. In reaching this conclusion, the court must note that plaintiffs have failed to adequately demonstrate that "no remedy" exists for their claims. There has been no showing that a tribal remedy does not exist. In any event, the simple lack of a remedy does not require the imposition of one by the court. In the area of Indian law, the court must tread lightly. We certainly are not persuaded that these cases require the use of the court's equity powers. Accordingly, the court declines the opportunity to make new and creative law.

### V.

■ In sum, the court finds that the defendant's motion to dismiss must be granted. The Tribe enjoys sovereign immunity from the claims asserted by the plaintiffs. Accordingly, the court lacks subject matter jurisdiction here.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss (Doc. # 3 in Case No. 01–4128–RDR) be hereby grant-

ed. This action shall be dismissed for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss (Doc. # 5 in Case No. 01–4129–RDR) be hereby granted. This action shall be dismissed for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**