IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 18, 2025 Session

## APPLIED UNDERWRITERS CAPTIVE RISK ASSURANCE COMPANY, INC., ET AL. v. TENNESSEE DEPARTMENT OF COMMERCE AND INSURANCE

Appeal from the Chancery Court for Davidson County
No. 24-487-IV      Russell T. Perkins, Chancellor

_____

No. M2024-01239-COA-R3-CV

_____

This appeal arises from a chancery court petition for interlocutory judicial review of an intermediate agency decision in a contested case proceeding before the Tennessee Department of Commerce and Insurance. The petition sought judicial review of the administrative law judge's denial of a motion to dismiss. The department moved to dismiss the petition for lack of subject matter jurisdiction. The chancery court construed the challenge as a factual challenge to subject matter jurisdiction and determined that an adequate remedy would be available to the petitioners in the form of subsequent judicial review of a final administrative decision. Accordingly, the chancery court granted the motion to dismiss. Petitioners appeal. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

Daniel Olivas, Nashville, Tennessee and Janet Strevel Hayes, Knoxville, Tennessee, for the appellants, Applied Underwriters Captive Risk Assurance Company, Inc.; California Insurance Company; and Continental Indemnity Company.

Jonathan Skrmetti, Attorney General and Reporter, J. Matthew Rice, Solicitor General, Pablo Varela, Assistant Attorney General, and Lauren W. Travis, Senior Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Commerce & Insurance.

Scott D. Carey, Claire Fox Hedge, and Meg Hancock, Nashville, Tennessee, for the appellee Milan Express Co., Inc.

# OPINION

## I. FACTS & PROCEDURAL HISTORY

This case contains an incredibly protracted and complicated procedural history. The present appeal stems from the chancery court's dismissal of a petition for interlocutory review. Said petition was filed after an administrative law judge denied the petitioners' motion to dismiss a contested case filed pursuant to the Uniform Administrative Procedures Act. Accordingly, our recitation of the facts comes largely from the pleadings and the record of other proceedings litigated between the parties. We will set forth only those facts which are necessary to the resolution of the present matter.

In September 2008, Milan Express Co., Inc. ("Milan"), one of the appellees in this matter, purchased worker's compensation insurance policies from Applied Underwriters Inc. ("Applied"), a nonparty in this case. The policies were offered as part of a product called "the Applied Underwriters Workers' Compensation Profit Sharing Plan."[1] This plan consisted of "guaranteed cost workers' compensation insurance policies and a 'protected cell,'" which was to be maintained by Applied Underwriters Captive Risk Assurance Company, Inc. ("AUCRA"), one of the appellants in this matter. The policies themselves were "procured" through Continental Indemnity Company and California Insurance Company, the other appellants in this matter. We will refer to the three appellants collectively as "the Petitioners" throughout this opinion. Additionally, participation in this program also required Milan to enter into a "Reinsurance Participation Agreement" ("RPA"), which was issued by AUCRA on October 1, 2008. The validity and legality of this RPA and its various clauses is the source of much of the conflict and litigation that has taken place between these parties.

Approximately three years after entering the agreement, it appears that Milan's premium amounts increased significantly. Milan refused to pay the increased premiums, and the insurance policy was cancelled on June 18, 2011, for non-payment. The parties engaged in litigation and arbitration in multiple forums for several years regarding amounts allegedly owed by Milan under the terms of the policy.

On March 7, 2016, AUCRA filed a new lawsuit in the District Court for Douglas County, Nebraska, in which it sought approximately $2,953,722.20 in damages.[2] Milan filed its answer on April 11, 2016, and levied various counterclaims against AUCRA. It is

---

[1] Milan states that it was required to purchase this insurance in order to "satisfy its obligations under worker's compensation laws."

[2] Appellants AUCRA and Continental Indemnity Company are both corporations with their principal places of business in Omaha, Nebraska. The RPA in this case contained a clause that AUCRA asserted requires the issues be litigated in Nebraska state court.

unclear what took place in the interim, but it appears that the parties continued litigating various issues pertaining to the arbitration agreement in Nebraska state court. Nevertheless, on July 7, 2020, Milan filed an amended counterclaim seeking declaratory relief, compensatory damages, and punitive damages. The declaratory relief sought was predicated on the assertion that AUCRA had "transacted insurance business in the State of Tennessee and other Insured States without a certificate of authority from the Commissioner" in violation of the statute, and thus the RPA was void. AUCRA filed a partial motion to dismiss in which it asserted that the Nebraska court was unable to rule on the declaratory judgment portion of Milan's counterclaim by operation of the "primary-jurisdiction doctrine." The Nebraska court agreed, and on December 18, 2020, entered an order requiring that the litigation be "stayed so as to give the parties reasonable opportunity to seek an administrative ruling in each applicable state as to the validity of RPA" as well as other issues. In order to obtain such a ruling in Tennessee, Milan would be required to seek a ruling from the Commissioner of the Tennessee Department of Commerce and Insurance ("the Commissioner").

However, on April 15, 2021, prior to Milan seeking such a ruling, the Tennessee Insurance Division of the Tennessee Department of Commerce and Insurance, ("the Department") the second appellee in this matter, filed an administrative "Notice of Hearing and Charges." In said pleading, it asked the Commissioner "to issue an order revoking or suspending the Certificate of Authority or insurance producer license of, and to impose civil penalties against" Applied, AUCRA, and Continental Indemnity Insurance Company for various violations of Tennessee insurance law. The charges contained allegations that these parties had "issued an unapproved insurance program to a Tennessee employer" in violation of Tennessee Code Annotated sections 56-2-102[3] and 56-2-105.[4] It is unclear from the record what occurred in these proceedings, but the Department filed a notice of voluntary dismissal of the action on February 4, 2022. An order of dismissal was entered by an administrative law judge on February 8, 2022.

On February 28, 2023, Milan filed a "Petition for Declaratory Order" before the Commissioner in which it identified each of the present Petitioners and sought a ruling that AUCRA had "issued an unapproved insurance program to a Tennessee employer" in violation of Tennessee Code Annotated sections 56-2-102 and 56-2-105, and thus the RPA was illegal and void.

---

[3] Tennessee Code Annotated section 56-2-102 states in relevant part: "No domestic insurance company or foreign insurance company shall commence business in this state until it has complied with § 56-2-101, . . . and has received from the commissioner a certificate of authority to do business." Tenn. Code Ann. § 56-2-102(a)

[4] Tennessee Code Annotated section 56-2-105 requires insurance companies, subject to certain exceptions, to obtain a "certificate of authority from the commissioner" prior to "enter[ing] into a contract of insurance as an insurer or [ ] transact[ing] insurance business in this state…" Tenn. Code Ann. § 56-2-105

On April 28, 2023, the Department issued a notice of the Commissioner's decision to grant the hearing request but stated that the hearing would take place at a date, time, and location to be scheduled in the future. A supplemental notice of hearing was provided on July 10, 2023, and scheduled the matter for hearing on October 25, 2023. These proceedings were to take place in the form of a contested case before an Administrative Law Judge. On January 2, 2024, the Petitioners filed a motion to dismiss the declaratory judgment action for the following reasons that are pertinent to this appeal: (1) the initial notice did not specify a date and time for the contested case hearing and thus the matter was not set within 60 days as required by statute, and (2) the proceedings had violated their due process rights.[5] By order entered on March 28, 2024, Administrative Law Judge Richard M. Murrell denied the motion to dismiss on all grounds.

On April 18, 2024, the Petitioners filed a "Petition for Judicial Review" of the denial of the motion to dismiss pursuant to the Tennessee Uniform Administrative Procedures Act ("UAPA") in the Davidson County Chancery Court. The Petitioners acknowledged that they were seeking review of an interlocutory order and asserted that their issues would not be adequately remedied by subsequent judicial review of a final agency decision. Thus, they averred that the denial of the motion was subject to immediate judicial review.

In response, the Department filed a motion to dismiss the petition pursuant to Tennessee Rule of Civil Procedure 12.02(1) and based on the terms of Tennessee Code Annotated section 4-5-223. Specifically, the Department averred that the Petitioners had not shown that they would be deprived of an adequate remedy if the contested case were to proceed through the administrative process, and thus the chancery court lacked subject matter jurisdiction to take up the appeal. *See* Tenn. Code Ann. § 4-5-322(a)(1). After a hearing, the chancery court subsequently entered an order on July 29, 2024, granting the motion to dismiss. The chancery court determined that the Department had lodged a factual challenge to its subject matter jurisdiction and found that the Petitioners would have an adequate remedy available in the form of judicial review of the final administrative decision. Accordingly, the chancery court determined that it did not have subject matter jurisdiction to adjudicate the claim and dismissed the petition. The Petitioners filed this appeal on August 15, 2025.

## II. ISSUES PRESENTED

The Petitioners have presented one issue on appeal, which contains two interrelated claims of error. For ease of review, we have reframed this issue into the following two issues:

---

[5] The Department explained in its brief that, prior to the October 25, 2023 hearing, the Petitioners moved for a continuance and to convert the initial hearing to a pre-hearing conference. This motion was granted. At some point, the hearing was rescheduled for November 7, 2024, and a hearing on the pending motion to dismiss took place on March 14, 2024.

1.  Whether the trial court erred by treating the challenge to its subject matter jurisdiction as a factual challenge rather than a facial challenge.
2.  Whether the trial court erred when it determined that an adequate remedy existed in the form of judicial review of a final agency decision.

For the following reasons, the judgment of the chancery court is affirmed.

## III.  DISCUSSION

### A.  Standard of Review

This is an appeal of the chancery court's dismissal of a petition seeking interlocutory judicial review.  The petition was filed after a motion to dismiss filed in a declaratory judgment proceeding was denied.  The chancery court granted the motion to dismiss the petition based on a lack of subject matter jurisdiction pursuant to Tennessee Rule of Civil Procedure 12.02(1).  "Subject matter jurisdiction involves a court's lawful authority to adjudicate a particular controversy." *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004).  A "chancery court's subject matter jurisdiction to review an administrative interlocutory order is conferred by the Tennessee Uniform Administrative Procedures Act, specifically Tennessee Code Annotated § 4-5-322(a)(1)." *Xcaliber Int'l Ltd., LLC v. Tennessee Dep't of Revenue*, No. M2017-01918-COA-R3-CV, 2018 WL 4293364, at *6 (Tenn. Ct. App. Sept. 10, 2018).  This statute provides that "[a] preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy." Tenn. Code Ann. § 4-5-322(a)(1).  Here, the chancery court determined that judicial review of a final agency decision would serve as an adequate remedy, and thus it did not have jurisdiction.

We conduct our review of this decision *de novo* "to determine whether the evidence supports a determination that review of the final agency decision will [ ] provide an adequate remedy." *Hyundai Motor Am. v. Tennessee Motor Vehicle Comm'n*, No. M2015-01411-COA-R3-CV, 2016 WL 7486362, at *3 (Tenn. Ct. App. Dec. 30, 2016).  However, "[t]o the extent that we need to review the trial court's findings of fact, we do so with a presumption of correctness unless the preponderance of the evidence is otherwise." *Xcaliber*, 2018 WL 4293364, at *6 (citing Tenn. R. App. P. 13(d)). "We review questions of law, including those of subject matter jurisdiction, *de novo* with no presumption of correctness." *Id.* (citing *Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 446 (Tenn. 2012)).

### B.  Facial Challenge or Factual Challenge

The Petitioners' first issue pertains to the type of challenge the Department made to the chancery court's subject matter jurisdiction.  A motion to dismiss for want of subject

matter jurisdiction made pursuant to Tennessee Rule of Civil Procedure 12.02(1) may be made as a facial challenge or factual challenge. *Church of God in Christ, Inc. v. L.M. Haley Ministries, Inc.*, 531 S.W.3d 146, 159-60 (Tenn. 2017) (citing *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 445 (Tenn. 2012)). In *Church of God*, our Supreme Court discussed the distinctions between facial and factual challenges to subject matter jurisdiction. The Court explained:

> A facial challenge attacks the complaint itself and asserts that the complaint, considered as a whole, fails to allege facts showing that the court has subject matter jurisdiction to hear the case. [*Redwing*, 363 S.W.3d] at 445-46. When evaluating a facial challenge to subject matter jurisdiction, a court limits its consideration to the factual allegations of the complaint and considers nothing else. *Id.* The court presumes the factual allegations of the complaint are true. If these factual allegations establish a basis for the court's exercise of subject matter jurisdiction, then the court must uncritically accept those facts, end its inquiry, and deny the motion to dismiss. *Id.*; *see also Staats v. McKinnon*, 206 S.W.3d 532, 542-43 (Tenn. Ct. App. 2006); *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Thus, when evaluating facial challenges to subject matter jurisdiction, courts are to utilize the familiar analytical framework that applies to motions to dismiss for failure to state a claim. *McKinnon*, 206 S.W.3d at 543.
>
> In contrast, factual challenges to subject matter jurisdiction do not attack the allegations of the complaint as insufficient. *Id.* at 543. Rather, a factual challenge admits that the alleged facts, if true, would establish subject matter jurisdiction, but it attacks the sufficiency of the evidence to prove the alleged jurisdictional facts. *Redwing*, 363 S.W.3d at 446; *McKinnon*, 206 S.W.3d at 543. When resolving a factual attack on subject matter jurisdiction, a court may consider matters outside the pleadings, such as affidavits or other documents. [*Anderson v. Watchtower Bible & Tract Soc. of New York, Inc., No. M2004-01066-COA-R9-CV*, 2007 WL 161035, at *32 n.23 (Tenn. Ct. App. Jan. 19, 2007)]; *see also Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995); *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990); *Hutterville Hutterian Brethren, Inc. v. Waldner*, 791 N.W.2d 169, 174 (S.D. 2010); *South v. Lujan*, 336 P.3d 1000, 1003-1004 (N.M. Ct. App. 2014). Furthermore, motions challenging subject matter jurisdiction are not converted to summary judgment motions when matters outside the pleadings are considered or when disputes of material fact exist. *Anderson*, 2007 WL 161035, at *32 n.23; *see also McKinnon*, 206 S.W.3d at 543 (citing *Chenault v. Walker*, 36 S.W.3d 45, 55-56 (Tenn. 2001)). Rather, courts presented with such motions must weigh the evidence, resolve any factual disputes, and determine whether subject matter jurisdiction exists. *Anderson*, 2007 WL 161035, at *32 n.23; *Hutterville Hutterian Brethren, Inc*., 791 N.W.2d at 175

(stating that, when a factual attack is mounted on subject matter jurisdiction, "the court must also weigh the evidence and resolve disputed issues of fact affecting the merits of the jurisdictional dispute"); *Osborn*, 918 F.2d at 729-30 (agreeing with the rule adopted by a majority of the federal circuit courts of appeal that, when a factual challenge to subject matter jurisdiction is mounted, the court may resolve disputed issues of material fact and decide the merits of the jurisdictional issue); 5B Charles A. Wright et al., Federal Practice and Procedure § 1350 & n.47 (3d ed. Supp. 2017) [hereinafter Federal Practice and Procedure]. The trial court may hold an evidentiary hearing limited to the question of subject matter jurisdiction if necessary to resolve jurisdictional factual disputes. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("[I]f subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own."); *see also Osborn*, 918 F.2d at 730; *Hutterville Hutterian Brethren, Inc.*, 791 N.W.2d at 175. Regardless of the manner used, the plaintiff bears the burden of establishing that the court has subject matter jurisdiction over the case. *McKinnon*, 206 S.W.3d at 543 (citing *Chenault*, 36 S.W.3d at 56).

*Church of God in Chris, Inc.*, 531 S.W.3d at 160-61. On appeal, the Petitioners contend that the chancery court improperly construed the motion to dismiss as a factual challenge to its subject matter jurisdiction when it should have been construed as a facial challenge. The Department avers that the chancery court properly construed its challenge as a factual challenge.[6]

To determine whether this challenge was a factual challenge, we must determine whether the Department challenged the sufficiency of the jurisdictional facts set out in the petition. *Id.* Jurisdictional facts have been defined as, "[a] fact that must exist for a court to properly exercise its jurisdiction over a case, party, or thing." Black's Law Dictionary (12th ed. 2024). Whether an adequate remedy is available, in this instance, is a jurisdictional fact as the statute grants jurisdiction to the chancery court only where an adequate remedy is not available.

The Department's motion to dismiss was predicated on its assertion that the Petitioners "failed to show that they will be deprived of an adequate remedy by allowing the [c]ontested [c]ase to proceed to a final decision." We have previously reviewed cases in which a chancery court's decision regarding subject matter jurisdiction was appealed for us to consider whether the chancery court had properly assessed the jurisdictional challenge

---

[6] The Petitioners also assert that the Department attempted to make both a facial and factual challenge, but they were not permitted to make both types of attacks. In its brief, the Department does not argue that it intended to make both a facial and factual challenge, and so we will not address this particular supporting argument.

as a facial or factual one. In at least two instances, we have held that such challenges, which were based on whether the petitioner demonstrated that the remedy of judicial review of a final agency decision was inadequate, were factual challenges. *Xcaliber*, 2018 WL 4293364, at \*8-9 (finding a challenge to a court's subject matter jurisdiction was a factual challenge where the party asserted that the petition for judicial review failed "to allege facts proving that 'review of the final agency decision would not provide an adequate remedy' "); *Hyundai*, 2016 WL 7486362, at \*3 (stating "it was incumbent upon the trial court, and this court in our review, to determine whether the evidence support[ed] a determination that review of the final agency decision will not provide an adequate remedy" and thus, the motion to dismiss constituted a factual challenge to the court's subject matter jurisdiction). The same is true here. The Department's motion to dismiss the petition averred that the "Petitioners have failed to show that they will be deprived of an adequate remedy by allowing the Contested Case to proceed to a final decision." Clearly, the Department asserted that the Petitioners failed to allege facts proving the remedy of judicial review of a final agency decision was inadequate. Accordingly, the chancery court properly assessed the motion to dismiss as a factual challenge to its subject matter jurisdiction.

### C. Adequate Remedy

Having determined that the chancery court correctly assessed the Department's argument as a factual attack to its subject matter jurisdiction, we now turn to the Petitioners' contention that they "should have prevailed under the factual attack standard because the Department failed to create any factual issues by failing to proffer any countervailing evidence." The chancery court determined that an adequate remedy was available, stating, "[j]udicial review of the final decision in this case will provide Petitioners with an adequate remedy." Additionally, the chancery court stated that the Petitioners "failed to show irreparable harm" and had not demonstrated the administrative review posed a significant risk of bias.

As explained above, interlocutory judicial review of an intermediate decision in a contested case filed pursuant to the UAPA is permitted only in limited circumstances. Tennessee Code Annotated section 4-5-322(a)(1) provides that "[a] preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy." We have previously considered claims akin to the one made here. *See Hyundai*, 2016 WL 7486362. In *Hyundai*, we considered the factual allegations in the petition for judicial review to determine "whether a final agency decision would provide [the petitioner] with an adequate remedy." *Id.* at \*4. To make that determination, we assessed the allegations set out in the petition. *Id.* We ultimately found that the determination of the substantive issue contained in the petition "required a factual determination which was to be resolved by the Commission," and thus, "[the petitioner] ha[d] failed to demonstrate that 'review of the final agency decision would not provide an adequate remedy,' Tenn. Code Ann. § 4-5-

- 8 -

322(a)(1)" *Id.* at \*6. We will undertake the same analysis here. Accordingly, we must determine whether the Petitioners have demonstrated that later judicial review of a final agency decision would not provide an adequate remedy.

The Petitioners submit three reasons why judicial review of a final agency decision would not constitute an adequate remedy in this case. First, they aver that "future review of a final agency decision [would] not restore the Constitutional due process rights [they have] lost and will continue to lose in the administrative proceeding." Second, the Petitioners contend that "the likelihood of the risk of retrial" renders review of a final administrative decision an inadequate remedy. Third, the Petitioners assert that the chancery court applied an improper standard when assessing whether an adequate remedy existed by examining whether an "irreparable injury" would occur as the basis for doing so. They assert that the risks present in this case also render judicial review of a final administrative order an inadequate remedy. We address each argument in turn.

### 1. Procedural Due Process

First, we consider the procedural due process argument that the Petitioners have raised to the extent it allegedly shows that judicial review of a final agency decision would not constitute an adequate remedy in this case. They assert that because the Department previously filed a "Notice of Hearing and Charges," it has already "prejudged Milan's Petition for Declaratory Order and cannot be a fair decision maker in the contested case," as many of the issues raised in the present matter are similar to those raised in the Department's charges. The Petitioners also assert that review of a final decision would not be adequate as it would be "on the record only, and the record [would] not include any direct evidence of the actual deliberations." Accordingly, the Petitioners posit that review of a final order would "not be able to inquire into, or to determine, whether, and to what extent, the risk of intolerable bias manifested itself and influenced the Department's decision." We disagree.[7]

The Petitioners rely on *Martin v. Sizemore*, in which we recognized that "[a] combination of prosecutorial and adjudicative functions is the most problematic

---

[7] It appears that, in conjunction with the argument that the chancery court erred by undertaking review as a factual challenge rather than a facial challenge, the Petitioners also claim the chancery court employed an incorrect standard of review. They assert that the chancery court was required to accept the allegations and assess only whether the allegations were sufficient to show there was not an adequate remedy available. Thus, the Petitioners take issue with the chancery court's statements that they had "failed to convince" it that later judicial review would not provide an adequate remedy and that they held a "difficult burden of persuasion" in establishing a threat of bias in the proceedings. However, as explained above, the chancery court properly assessed this as a factual challenge to subject matter jurisdiction and thus, were required to "weigh the evidence, resolve any factual disputes, and determine whether subject matter jurisdiction exists." *Church of God in Christ, Inc.*, 531 S.W.3d at 160. Accordingly, the chancery court properly charged Applied with the burden of demonstrating that an adequate remedy was not available. *See Hyundai*, 2016 WL 7486362, at \*6.

combination for procedural due process purposes." 78 S.W.3d 249, 265 (Tenn. Ct. App. 2001). However, we went on to state that "the risk of bias becomes intolerably high only when the prosecutor serves as the decision-maker's advisor in the same or a related proceeding." *Id.* Additionally, we noted "that some combination or overlapping of functions in an administrative proceeding is not inconsistent with fundamental fairness." *Martin*, 78 S.W.3d at 264. Our Supreme Court has likewise noted that "[u]nlike a judicial system, in which investigative, prosecutorial, and adjudicative functions are separate, some overlapping of these functions is inherent in administrative agencies, like the Board [of Professional Responsibility]." *Moncier v. Bd. of Prof'l Resp.*, 406 S.W.3d 139, 159 (Tenn. 2013). We are unconvinced that charges having been previously brought and dismissed by the Department alone creates an undue risk of bias in the present proceedings that would make final review inadequate. As the chancery court noted, the Petitioners have "not demonstrated overlapping roles of the Department's staff nor bias on the part of the Commissioner." The Petitioners have not pointed to any evidence in the record which preponderates against these findings. Similarly, the Petitioners' claim that judicial review of the final administrative decision would not serve as an adequate remedy because it would "not be able to inquire into, or to determine, whether, and to what extent, the risk of intolerable bias manifested itself and influenced the Department's decision" is unconvincing based on the availability of *de novo* review. *See Cooper v. Williamson Cnty. Bd. of Educ.*, 746 S.W.2d 176, 183-84 (Tenn. 1987) (explaining the curative effects of a chancery court's *de novo* review which "readjudicates the matter in a neutral forum, completely eliminating any arbitrariness or capriciousness in the board's decision, which is not afforded a presumption of correctness").

Importantly, the substantive issue raised in the motion to dismiss pertains to the interpretation of Tennessee Code Annotated section 4-5-223(c). The issue is whether the Department granted the petition for hearing within the sixty-day timeframe espoused in the statute. As we have previously explained, "'statutory construction remains a question of law. Accordingly, the courts review an agency's interpretation of statutes without a presumption of correctness.'" *H & R Block E. Tax Servs., Inc. v. State, Dep't of Commerce & Ins., Div. of Ins.*, 267 S.W.3d 848, 855 (Tenn. Ct. App. 2008) (quoting *Kidd v. Jarvis Drilling, Inc.*, No. M2004-00973-COA-R3-CV, 2006 WL 344755, at *4 (Tenn. Ct. App. Feb. 14, 2006)). We further explained that a "Commissioner's ruling is 'entitled to consideration and respect,' but not necessarily to 'deference.' The ruling is neither controlling nor presumed correct" and further, "[i]f [a reviewing court] find[s] error in either the Commissioner's interpretation of the statute or her application of the statute to the case's undisputed facts, [it] will be 'impelled to depart from it.'" *Id.* (quoting *Kidd*, 2006 WL 344755, at *4). Therefore, in the present case, a reviewing court would be tasked with determining whether the Department's interpretation and application of the statute at issue was correct as a matter of law. Thus, any potential bias would not have any effect on the court's review as the Department's decision would be afforded respect but not a presumption of correctness. Accordingly, we are unconvinced that judicial review of a final administrative decision would be an inadequate remedy based on the threat of bias

influencing the Department's interpretation of the statute, as no intolerable risk of bias has been shown.

## 2. Risk of Retrial

We now turn to the Petitioners' second contention that "[b]ecause of the likelihood of the risk of retrial, future review of a final order would not be an adequate remedy." The Petitioners assert that if the Department's decision is reversed after the completion of the administrative process, it would require the contested case to be dismissed as the challenge pertains to subject matter jurisdiction. The Petitioners claim at that point, "there is little doubt that Milan would, indeed, refile the case and force the parties to do everything twice."

The Petitioners rely heavily on our opinion in *Xcalibur* to support this argument. 2018 WL 4293364. *Xcalibur* dealt with a Rule 12.02(1) motion to dismiss a petition for interlocutory judicial review in a contested case filed pursuant to Tennessee Code Annotated sections 67-1-105(a)(1) (2013) and 67-4-2606(a). *Id.* at *3-5. The underlying substantive issue concerned a motion to compel certain discovery, which the Administrative Law Judge had denied. *Id.* at *4-5. The Department of Revenue filed a motion to dismiss the petition for want of subject matter jurisdiction. *Id.* at *5. Xcalibur appealed. *Id.*

After determining that the challenge to subject matter jurisdiction had been a factual challenge, the trial court turned to the question of whether Xcalibur had met its burden of showing the remedy available was not adequate. *Id.* at *10. The Court outlined the approach taken in *Hyundai* and noted that the same method of analysis would be applicable. *Id.* at *10. However, unlike the *Hyundai* Court, the *Xcalibur* Court determined that final judicial review would not constitute an adequate remedy under the specific circumstances of the case based on a combination of several factors. *Id.* at *11-12. First, the court noted that:

> "[j]udicial review of this interlocutory discovery issue in a final administrative decision would require the trial court to search for *the absence* of substantial and material evidence to support a decision in favor of the Department and trace that absence to the earlier discretionary administrative denial of Xcalibur's motion to compel, all while taking care not to substitute its judgment for the agency's judgment concerning the weight to be given the evidence already established in the record."

*Id.* at *11. Additionally, the court noted that this remedy "would entail a substantial risk of retrying the entire case before the ALJ because any newly discovered evidence would not only have to be presented to the ALJ but could also affect the need for additional testimony from witnesses and presentation of arguments on previously admitted evidence." *Id.* at *12. The court agreed with Xcalibur that these possibilities presented a substantial

risk the parties would be required to expend additional money and resources retrying the case on this issue and implicated the interest of judicial economy. *Id.* The court determined "that the risk of retrying the case means that consideration of judicial economy weighs against a finding that judicial review of the final administrative order would be an adequate remedy." *Id.* The court further stated "that, under the specific facts of this case, judicial review of a final administrative decision would not provide an adequate remedy" and thus, the trial court had subject matter jurisdiction to conduct an interlocutory review of the order to deny petitioner's motion to compel discovery. *Id.* at *17.

The Petitioners contend that a similar risk of retrying the case exists here and cite the same "practical concerns" of judicial economy and the expending of monetary and other resources in retrying the case. *Xcalibur*, 2018 WL 4293364, at *12. The Petitioners aver that retrying the case would require new or additional discovery be conducted, "motion work" to "repeat" based on the new discovery, additional hearings, and witnesses either reappear or new witnesses appear for the first time. The Petitioners also note that they have challenged the timeliness of the setting of the cause for hearing, which invokes the subject matter jurisdiction of the Department to hear the case. They cite this as the largest risk of retrial, stating that if it were later determined that the notice for hearing had been untimely returned, it would result in Milan refiling its claim which would "force the parties to do everything twice."

In addition to *Xcalibur*, we considered a similar issue in *Mosely v. City of Memphis*, No. W2019-00199-COA-R3-CV, 2019 WL 6216288, at *3 (Tenn. Ct. App. Nov. 21, 2019). That case involved a motion to disqualify an attorney from the Memphis City Attorney's Office and/or the entire Memphis City Attorney's Office from appearing in certain administrative proceedings pending before the city's Civil Service Commission. *Id.* at *1. Six different persons who had matters pending before the Commission filed a collective motion to exclude the attorney and the City Attorney's Office from appearing before the Commission. *Id.* The Commission conducted a hearing on the motion and denied the motion for disqualification; the petitioners then filed a petition for judicial review in the Shelby County Chancery Court which determined no error had occurred. *Id.* at *2. The petitioners appealed to this court, and we were faced with determining whether subject matter jurisdiction was appropriate in the chancery court and on appeal. *Id.* at *3-4. We determined "that immediate review was appropriate" as the same risk of retrial that influenced our decision in *Xcalibur* existed to an even higher degree. *Id.* at *5. We gave great weight to the fact that the issue concerned six different petitioners and thus, six different cases in which disqualification was sought. *Id.* Accordingly, if immediate review were not permitted, "and final judgment [was] rendered, each and every unsuccessful petitioner [would have been] required to separately appeal the final judgment in his or her respective case to obtain review of the denial of disqualification." *Id.* This would have resulted in multiple cases having been retried before the agency and would have heavily burdened judicial efficiency. *Id.* Accordingly, we held that later judicial review of the final agency decision would not have constituted an adequate remedy, and therefore

- 12 -

immediate judicial review was authorized by Tennessee Code Annotated section 4-5-322(a). *Id.*

While these cases bear some similarity to the present case, they are distinguishable. There certainly exists some risk of retrying the present case, but the extreme risks to judicial economy which were present in *Xcalibur* and *Mosely* do not exist here. First, we acknowledge that the risk that a case will need to be retried after judicial review of a final agency decision exists in all contested cases. While we determined the circumstances present in both *Xcalibur* and *Mosely* rendered this risk so paramount that it left judicial review of a final agency decision inadequate, those rulings were both predicated on extreme circumstances. *Xcalibur* would have required the implementation of a complicated and largely untenable review of the evidence in which the reviewing court would be required to assess different pieces of evidence under a different standard of review, as well as searching for the absence of evidence rather than its existence. 2018 WL 4293364, at *11. *Mosely* would have required six individual cases to be retried with different counsel representing the city. 2019 WL 6216288, at *5.

Here, the issue raised in the petition pertains only to the interpretation of Tennessee Code Annotated section 4-5-223(c). Thus, review of this decision would involve *de novo* review of an issue of law and would not require any additional discovery or the application of different standards of review to different pieces of evidence. Additionally, it would not require the reviewing court to search for the absence of evidence supporting the Department's decision. *See Xcalibur*, 2018 WL 4293364, at *11. These factors are what led to the determination that judicial review of the final decision "would entail a substantial risk of retrying the entire case." *Id.* at *12. Here, while there is the possibility that the reviewing court could determine the Department's interpretation of the statute is incorrect, there are not complicating factors that would render a greater risk of retrial in this matter than in a normal contested case proceeding. Additionally, if review of the final administrative decision did result in the case being retried, it would be limited to a single case, rather than six separate cases as was the case in *Mosely*.

It does not appear that the interest of judicial economy would be served by permitting immediate review in this situation. While *Xcalibur* and *Mosely* do provide that circumstances may exist which render the normal remedy of judicial review of a final agency decision inadequate, those cases do not authorize interlocutory review of an intermediate agency decision each time a question of law is raised. If we permitted any question of law which arose during a contested case proceeding to be eligible for immediate review, we would open the door to frequent interlocutory appeals. While we do not disagree with the well-reasoned opinions in *Xcalibur* and *Mosely*, those opinions were predicated on the existence of very specific circumstances, the likes of which do not exist here. We note that it is incumbent on the Petitioners to demonstrate that the normal remedy offered in a contested case hearing would not be adequate in this case. *Xcalibur*, 2018 WL 4293364, at *7; *Hyundai*, 2016 WL 7486362, at *6. They have not done so, as they have

- 13 -

not provided facts indicating that an extreme risk of retrial or other major impediment to judicial efficiency would be created here. Therefore, the chancery court did not err when it determined that an adequate remedy existed in the form of judicial review based on any risks of retrial that may have been present.

### 3. Proper Standard

Finally, we consider whether the chancery court erred by applying an improper standard. The Petitioners claim that the chancery court used an "irreparable harm" standard to determine whether it had subject matter jurisdiction over the claim. They argue that the chancery court assessed only whether the Petitioners would be irreparably harmed if judicial review were not undertaken instead of whether judicial review of a final agency decision was an adequate remedy.

In its final order, the chancery court acknowledged that Tennessee Code Annotated section 4-5-322(a)(1) grants jurisdiction to conduct interlocutory judicial review of an intermediate agency decision where judicial "review of the final agency decision would not provide an adequate remedy." The chancery court stated that it was "incumbent upon [it] to determine whether the evidence support[ed] a determination that review of the final agency decision [would] not provide an adequate remedy." The chancery court then cited irreparable injury as "an example" of a factual circumstance which would result in judicial review being an inadequate remedy. *See Xcaliber*, 2018 WL 4293364, at \*16. However, it also noted that an irreparable injury was not the sole basis for determining judicial review to be an inadequate remedy. *Id.* The chancery court went on to address the Petitioners' concerns with the timely setting of the contested case hearing and the risk of bias based on the overlapping roles of the Department in its filing of charges in 2021 and its role of reviewing the issues in this litigation. The court determined that there had not been a showing of a high risk of irreparable harm. Based on each of these, the chancery court stated the petitioners failed to convince it "that review of the final agency decision would not provide an adequate remedy."

The Petitioners have not demonstrated that the chancery court applied an improper standard when disposing of this issue. The chancery court cited the appropriate legal standard set out in Tennessee Code Annotated section 4-5-322(a)(1) and clearly addressed the Petitioners' concerns. It cited the possibility of an irreparable injury as a factual circumstance which would render judicial review of a final agency decision an inadequate remedy. However, the chancery court also went on to explain that the Petitioners had not convinced it "that review of the final agency decision would not provide an adequate remedy." Specifically, the chancery court noted that "[a]lthough the potential exists for a determination unfavorable to Petitioners, the Department could equally choose to rule in favor of Petitioners, rendering any subsequent appeal by Petitioners unnecessary." The chancery court acknowledged the Petitioners' concerns pertaining to the risk of retrial but determined this risk did not render judicial review of a final agency decision an inadequate

remedy. The chancery court also noted that the Petitioners had "not demonstrated overlapping roles of the Department's staff nor bias on the part of the Commissioner" indicating it gave consideration to those claims as well. Accordingly, the chancery court did not employ an improper standard. Each of the Petitioners' concerns with the adequacy of the remedy were addressed.

Having reviewed each of the arguments posited by the Petitioners, we find the chancery court did not err when it determined it lacked subject matter jurisdiction to conduct an immediate review of the intermediate agency decision. The Petitioners have failed to demonstrate that judicial review of the final administrative decision would not serve as an adequate remedy for its concern with the application of Tennessee Code Annotated section 4-5-223(c). Accordingly, we affirm.

## IV. Conclusion

For the foregoing reasons, the judgment of the chancery court is affirmed. Costs of this appeal are taxed to the appellants, Applied Underwriters Captive Risk Assurance Company, Inc.; California Insurance Company; and Continental Indemnity Company, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE